# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DONNA DAWN KONITZER,

      Plaintiff,

      v.                                                                Case No. 07-C-527

JOSE ALBA,

      Defendant.

ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS (DOC. #2) AND DISMISSING THIS ACTION FOR LACK OF STANDING

      The plaintiff, who is a state prisoner proceeding *pro se,* lodged this action under 42 U.S.C. § 1983, alleging violations of federal civil rights and Wisconsin state law. Now, the matter is before the court on the plaintiff's petition to proceed *in forma pauperis*, following payment of the initial partial filing fee of $ .97, *see* 28 U.S.C. § 1915(b)(1), and an additional partial filing fee of $2.25.

      The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

      A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The court

may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). It is not necessary for the plaintiff to plead specific facts; his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, __ U.S. __, 127 S. Ct. 2197, 2200 (2007) (citations omitted). In deciding whether the complaint states a claim, the court must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1965 (2007). There is no heightened pleading requirement for pro se prisoner civil rights complaints. *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). Of course, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." *Id.* at 970.

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: 1) that he or she was deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon the plaintiff by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, however inartfully pleaded, a liberal construction. *See Erickson*, 127 S. Ct. at 2200 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Previously, plaintiff Konitzer was incarcerated at the Wisconsin Resource Center (WRC); Konitzer is currently incarcerated at the Columbia Correctional Institution (CCI).[1] The complaint asserts that defendant Jose Alba, MD, is a psychiatrist at WRC. Additional defendants and their positions are hinted but are not otherwise identified.

The complaint sets forth the four following claims.

Claim 1

According to the complaint, in December 2005, after being threatened by defendant Dr. Alba with termination of female hormone therapy if Konitzer refused to talk to Dr. Alba, Konitzer became concerned about the hormone therapy due to a number of symptoms Konitzer was experiencing. Then,

> [Konitzer] requested that estradiol levels be taken and her estradiol level tested a 27. This is within the range of a normal biological male who is not on feminizing hormone therapy, which is inconsistent with plaintiff's hormone therapy. Plaintiff attempted to have something done about this and Jose Alba repeatedly impeded her efforts to see the WRC Physician. Plaintiff's hormone levels were not adjusted until Feb 20, 2006. **Well after the Court's injunction order against defendants in case no 03-CV-717, out of this same district,** in which the defendants were barred from stopping the plaintiff's hormone therapy.

(Compl. at [unnumbered] 3) (emphasis in original). The complaint asserts that Kontizer's estradiol levels have been too low for a long time. Specifically, "during the period between

---

[1] Although Konitzer has not informed the court of an institution transfer, the plaintiff's filings in *Konitzer v. Frank*, Case No. 03-cv-717 (E.D. Wis.), indicate that Konitzer has been transferred to CCI. In addition, an Internet search of Wisconsin DOC VINEInk confirms that Kontizer is incarcerated at CCI. *See* http://www.vinelink.com/vinelink/initSearchForm.do?siteId=50001 (last visited November 8, 2007).

Wisconsin DOC VINELink is an online resource where the public can access information about offenders who are incarcerated in, or recently released from, a Wisconsin DOC Correctional facility. This service is provided by the Wisconsin DOC Office of Victim Services and Programs (OVSP) in an effort to keep crime victims and the public informed. *See* http://www.vinelink.com/vinelink/siteInfoAction.do?siteId=50001 (last visited November 8, 2007).

3

November of 2005, to present, plaintiff has repeatedly complained to defendants and sought help for hormonally related problems, specifically, symptoms of severe hormone loss, including loss of additional head hair, itching, nausea, headaches, body aches, joint pain, hot flashes, loss of some female secondary sex characteristics, severe mood swings and irritability and the loss of 46 pounds of body weight in less than a years time without trying to lose weight." (Compl. at [unnumbered] 4.) It goes on to allege that the "defendants" sent Konitzer to outside doctors to address the medical problems and then told the doctors what care to provide or coerced doctors into reversing their treatment recommendations and allowing the Wisconsin Department of Corrections and the WRC to decide what is medically necessary for Konitzer.

Claim 2

The complaint further asserts that Konitzer was sent to experts at the University of Wisconsin Medical School, Department of Endocrinology. However, the defendants did not inform the doctors of Konitzer's symptoms and as a result the appointment took an inordinate amount of time. "The defendants have a history of sending me to their specialists and then refusing to provide the case prescribed by the specialists. When I repeatedly inquired of the defendants why they had not responded to my queries regarding the care plan established for me by UW endocrinology Doctors on 9-20-06, the defendants refused to respond, simply ignoring my requests." (Compl. at [unnumbered] 5.) At one point Dr. Alba told Konitzer that the Director of the WRC was reviewing the UW doctors' recommendations to decide if they were medically necessary. However, the complaint submits that "[t]he Director of WRC is not a PhD, or an M.D., and is no position to be making medical decisions for anyone." *Id.* The complaint offers that Dr. Alba willfully

4

refused to implement a care plan by the UW doctors which was designed to minimize suffering.

Claim 3

In December 2006, Dr. Alba participated in a teleconference with UW Hospital Medical School Endocrinology Clinic "for the purpose of reversing the care plan established by those doctors" regarding providing Konitzer with bras. *Id.* Part of the care plan stated that bras were medically necessary for Konitzer. "Essentially, Defendant Alba involved himself in getting UW Doctors to go back on their recommendations by lying to them and telling them they had provided plaintiff breast support and that providing bras could cause plaintiff to be sexually or otherwise assaulted by her peers." *Id.* In addition, Dr. Alba conspired with UW doctors and others as yet unidentified, to refuse a medical care plan by UW doctors and get those doctors to state that they would allow WRC to decide what was medically necessary for Konitzer in the future.

Claim 4

In May 2006, Konitzer castrated a testicle in an effort to self-regulate hormone levels. Since that time, Konitzer has not received a hormone therapy adjustment, although it is "medically mandated." As a result, Konitzer suffers the symptoms set forth in Claim 1 and pain in the scrotal area due to suspensory ligament healing to the scrotal tissue.

Relief Requested

The complaint requests the following injunctive relief. First, a temporary restraining order that defendant Dr. Alba "not . . . have **any** involvement in the plaintiff's medical care whatsoever including discussions of plaintiff with others, as defendant has

5

Case 2:07-cv-00527-CNC   Filed 11/14/07   Page 5 of 8   Document 8

repeatedly impeded plaintiff's attempts to obtain medical care at WRC and is a clear danger to the plaintiff's health and safety." (Compl. at [unnumbered] 7.) Second, that Dr. Alba "send the plaintiff to a recognized expert in gender identity disorder who is a member of the Harry Benjamin International Gender Dysphoria Association, and follows the standards of care for GID and that the defendants provide whatever treatment such expert recommends." *Id.*

Analysis

As an initial matter, it appears that Konitzer lacks standing to assert claims for injunctive relief as a prisoner who is no longer incarcerated at the WRC where the subject claim arose. In *Knox v. McGinnis*, 998 F.2d 1405 (7th Cir. 1993), the court held that a prisoner lacked standing to seek injunctive relief against the future use of a "black box" on prisoners in segregation because he had been released from segregation and returned to the general prison population where he was no longer subject to the use of the "black box." In reaching its decision, the court relied upon *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) and *O'Shea v. Littleton*, 414 U.S. 488 (1974).

In *Lyons*, the plaintiff sued the City of Los Angeles and several police officers, alleging that the officers stopped him for a routine traffic violation and applied a chokehold without provocation. He sought an injunction against future use of the chokehold unless the suspect threatened deadly force. The Supreme Court held that the plaintiff lacked standing to seek injunctive relief because he could not show a real or immediate threat of future harm. *Lyons*, 461 U.S. at 105. The Court relied upon its earlier decision in *O'Shea* in which the court stated that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any

continuing, present adverse effects." *O'Shea*, 414 U.S. at 495-96. In *O'Shea*, the plaintiffs had alleged discriminatory enforcement of criminal laws. The Court held that there was no case and controversy because "the threat to plaintiffs was not 'sufficiently real and immediate.'" *O'Shea*, 414 U.S. at 496-97. Similarly, in *Lyons*, the Court found that, although an allegation of an earlier choking was sufficient to confer standing for a damage claim, it did "nothing to establish a real and immediate threat" that the plaintiff would again be stopped for a traffic violation and a chokehold put on him. *Lyons*, 461 U.S. at 105.

In the instant case, Konitzer cannot establish a real or immediate threat of future incarceration at the WRC. The mere possibility that Konitzer may again be incarcerated at the WRC is too speculative and does not establish a real and immediate case or controversy. *Knox*, 998 F.2d at 1413-14; *see also Robinson v. City of Chicago*, 868 F.2d 959 (7th Cir. 1989). In light of the foregoing,

**IT IS ORDERED** that the Konitzer's motion for leave to proceed in forma pauperis (Doc. #2) be and hereby is **GRANTED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** for lack of standing.

**IT IS FURTHER ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from Konitzer's prison trust account the $346.78 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the

amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS ALSO ORDERED** that a copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

Dated at Milwaukee, Wisconsin, this 14th day of November, 2007.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U.S. District Judge